COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present: Judges Malveaux, Raphael and Frucci
Argued at Arlington, Virginia


KAREN WILLIAMS, ET AL.

OPINION BY
v.        Record No. 1585-23-4                JUDGE STEVEN C. FRUCCI
AUGUST 6, 2024

RAPPAHANNOCK COUNTY
 BOARD OF SUPERVISORS, ET AL.


FROM THE CIRCUIT COURT OF RAPPAHANNOCK COUNTY
Douglas L. Fleming, Jr., Judge

David L. Konick for appellants.

Jeremy D. Capps (Sarah M. Carroll; Whitson W. Robinson; Harman,
Claytor, Corrigan & Wellman; Robinson & Stover, on brief), for
appellees.


Karen Williams, Michael Williams, Sherry Hamill-Huff, Bruce Williams, Samuel Foreback,

Charles Baker, Patsy Baker, and Norma Settle (collectively, "appellants") appeal the circuit court's

order granting the pleas in bar of Rappahannock County Board of Supervisors, David Jarrell,

David Bailey, Timothy Bills, Patrick O'Malley, Hugh Hill, and Flint Hill Volunteer Fire

Company (collectively, "appellees"). For the reasons below, we reverse and remand.

I.  BACKGROUND

The Flint Hill Volunteer Fire Company (hereafter, "Flint Hill") was incorporated in 1954

as a Virginia nonstock corporation. The purposes of Flint Hill included to "fight fires in the

Town of Flint Hill and the County of Rappahannock." Rappahannock County (hereafter,

"County") entered into a "Fire and Rescue/EMS Services Agreement of 2018, as Amended in

2019," (hereafter, the "Services Agreement") with numerous companies, including Flint Hill, to

"provide a clear framework within which [Rappahannock] County . . . and the individual

Volunteer Fire and Rescue Companies mutually operate to deliver timely and efficient fire, rescue, and emergency medical services to the public."[1]

Over the past few years, Flint Hill had difficulties meeting performance goals and certification requirements. As a result, Flint Hill sought assistance from the other volunteer fire and rescue departments, the Rappahannock County Fire and Rescue Association, and the Board of Supervisors. Following, the Board of Supervisors called a special meeting on January 26, 2023. Claiming "various . . . deficiencies" had led to "doubt in the community that Flint Hill leadership is capable of effectively delivering services to the community,"[2] the Board of Supervisors adopted a resolution that removed the existing officers and directors of Flint Hill and

---

[1] Notably, the Services Agreement stated that "§27-6.02 permits Rappahannock County to contract with Volunteer Fire and Rescue Companies or associations for the provision of fire, rescue, and emergency medical services in said county." The Services Agreement also provided that "[t]he Companies shall have control of its operations and services and shall function in accordance with its charter and bylaws, provided such operations, services and functions are consistent with this agreement." If there were "[c]hallenges impacting the company's abilities to meet the listed response standards," the Services Agreement stated the issues were to be "brought to the [Rappahannock County Volunteer Fire and Rescue] Association for review and assistance.

[2] Numerous deficiencies were cited by the Board of Supervisors, including

> findings of the Rappahannock County Public Safety Committee (appointed by the Board [of Supervisors]) that [Flint Hill] "failed to meet many of the listed obligations including call response requirements and maintaining good financial practices," a[] . . . finding by an auditor hired by the County "that there exist material weaknesses in each of the four most recent [Flint Hill] audits," allegations that "the Virginia State Police are currently investigating financial management concerns raised as a result of questionable requests for county funds," allegations that [Flint Hill]'s "call response rate has failed to meet the county-wide response time objectives of responding within eight minutes and being on scene within twenty-five minutes 90% of the time"; allegations that in February 2022, [Flint Hill] "was forced to cease EMS services due to failed state inspections, and subsequently failed to be recertified by the Virginia Office of EMS causing their EMS license to expire on April 1, 2022."

appointed new ones at the meeting (hereafter, the "Resolution"). Under Flint Hill's bylaws, officers and directors must be "full voting member[s]" and elected upon a vote of existing members. However, that procedure was not used in appointing the new officers and directors.

In response, previous officers and directors, the appellants, brought a petition against appellees under Code § 13.1-861, seeking a declaratory judgment, injunctive relief, and judicial review of an election of directors. Appellants alleged that actions taken by the Board of Supervisors in the Resolution were in violation of Flint Hill's 1954 Certificate of Incorporation, its duly adopted bylaws, and applicable provisions of the Code of Virginia. Appellees filed pleas in bar asserting that Flint Hill was, in fact, organized pursuant to Title 27 of the Code of Virginia, making the Resolution lawfully adopted. They argued that, in the alternative, appellants' claims were barred by equitable estoppel due to the Services Agreement. Appellants moved to strike the pleas for being improper pleas of the general issue.

After a hearing, the circuit court ruled that Flint Hill's incorporation under Title 13 of the Code of Virginia does not preclude it from being "organized pursuant to Code § 27-8," "a fire company" as defined in Code § 27-6.01, and subject to the provisions of Title 27 of the Code of Virginia. It further found, that even if Flint Hill did not meet the definition of "fire company" under Title 27 of the Code of Virginia, the doctrine of equitable estoppel bars the appellants' claims after they participated and entered into the Services Agreement. Lastly, it found that Code § 27-13 permitted the Board of Supervisors to appoint officers and directors "in any such manner as [it] may direct," and held that this made the removals and appointments at hand lawful. The circuit court thus granted the pleas in bar, leading to this appeal.

## II. ANALYSIS

Appellants challenge the circuit court's rulings: (1) granting the pleas in bar; (2) holding that Code § 27-13 authorized the Board of Supervisors to remove and appoint officers and directors of

Flint Hill;[3] (3) finding that Flint Hill was a "fire company" as defined in Code § 27-6.01 to which Code § 27-13 applied despite Flint Hill being organized under Title 13 of the Code of Virginia as a not-for-profit corporation and its organization allegedly not meeting the requirements of Code § 27-9; and (4) holding that, by becoming a party to the 2019 "Services Agreement," Flint Hill acknowledged it was a "Fire Company" subjected to Title 27 of the Code of Virginia and was "estopped" from contesting that issue.[4]  Because we find that Code § 27-13 did not authorize the Board of Supervisors to remove officers and directors of Flint Hill, we reach only that issue.  *See Ali v. Commonwealth*, 75 Va. App. 16, 37 n.9 (2022) (noting that "[t]he mechanism of assuming

---

[3] Appellants also assign error to the circuit court's "ignor[ance of] Appellants claim under Code § 13.1-861 and fail[ure] to rule on the issue of whether or not the Individual Appellees were lawfully elected to the Flint Hill Board of Directors by the Board of Supervisors" when conducted in a manner contrary to Flint Hill's bylaws.  Contrary to the allegation, the circuit court did rule on this issue by finding that Code § 27-13 authorized the Board of Supervisors to remove and appoint officers and directors of Flint Hill in any manner that the governing body may direct, making the bylaws irrelevant.

[4] While appellants originally assigned error to the circuit court overruling appellants' claim that the pleas in bar were improper pleas of the general issue, this argument was withdrawn at oral argument.  Because appellants withdrew this assignment of error, we need not decide whether appellees' pleas in bar were improper pleas of the general issue, rather than permissible pleas in bar (also known as "special pleas").  *See generally* Kent Sinclair, Leigh B. Middleditch, Jr., *Virginia Civil Procedure* § 9.8 (7th ed. 2020).  It was noted at oral argument that, under common-law pleading rules, a trial court's error in mistaking a plea in bar for a plea of the general issue was generally not considered reversible error.  *See Norfolk & W. Ry. Co. v. Mundy*, 110 Va. 422, 425 (1909) (stating that "[t]he averments of these pleas are equivalent to the general issue, and in such case the rule is to reject the special pleas, though the failure to do so does not of itself constitute reversible error"); *see also Sutherland v. Wampler*, 119 Va. 800, 802 (1916) (stating "[t]he admission of such plea is a matter within the discretion of the trial court, the exercise of which generally will not be subject to review by the appellate court"); Martin P. Burks, *Common Law and Statutory Pleading and Practice* § 216, at 371 (4th ed. 1952) (stating "if the defendant should plead a matter specially which amounts to the general issue, and the plaintiff does not object to it but takes issue on it, or if he objects on that ground but his objection is overruled it is of itself no ground for reversal").  Our appellate courts have not yet considered whether that harmless-error principle survived enactment of our modern rules of court in 1950, which abolished pleas of the general issue but preserved pleas in bar.  *See* Rules of the Supreme Court of Appeals of Virginia, 190 Va. cii (1950) (Rule 3:5); Rule 3:8(a) (stating "[a] general denial of the entire complaint or plea of the general issue is not permitted").  Appellants' withdrawal of this assignment of error makes it unnecessary to reach that question either.

without deciding a particular point in issue sometimes facilitates the appellate court's achievement of th[e] goal" of "decid[ing] cases on the best and narrowest ground"); *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (stating that "the doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available'" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (quoting *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010)). "The party asserting the plea in bar bears the burden of proof." *Id.* If the "parties present evidence on the plea ore tenus, the circuit court's factual findings are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support." *Id.* But we review de novo the circuit court's "application of the law to the facts." *Ferguson v. Stokes*, 287 Va. 446, 450 (2014). Furthermore, "[w]e review issues of statutory interpretation de novo." *Taylor v. Commonwealth*, 77 Va. App. 149, 162 (2023). "This same de novo standard of review applies to determining the proper definition of a particular word in a statute." *Id.* (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 537 (2015)).

> *Assuming without deciding that Code § 27-13 was applicable to Flint Hill, the circuit court did erroneously rule that Code § 27-13 authorized the Board of Supervisors to remove and appoint officers and directors of Flint Hill.*

Appellants also contend that the circuit court erroneously ruled that Code § 27-13 authorized the Board of Supervisors to remove and appoint officers and directors of Flint Hill notwithstanding contrary provisions of Flint Hill's Certificate of Incorporation and bylaws. "Whether a municipality has the power to act is a question of law we review de novo." *Bragg Hill Corp. v. City of Fredericksburg*, 297 Va. 566, 578 (2019). "The Dillon Rule of strict construction controls our determination of the powers of local governing bodies." *Id.* (quoting

*Marble Techs., Inc. v. Hampton*, 279 Va. 409, 417 (2010)).  Under this rule, local governing bodies, like the Board of Supervisors, "have only those powers that are (1) expressly granted by the General Assembly, (2) 'necessarily or fairly implied' from those express powers, and (3) 'essential to the declared objects and purposes' of the municipality."  *Id.* (quoting *Chesapeake v. Gardner Enters.*, 253 Va. 243, 246 (1997)).  "If there is a reasonable doubt whether legislative power exists, the doubt must be resolved against the local governing body."  *Bd. of Supervisors v. Reed's Landing Corp.*, 250 Va. 397, 400 (1995).

In determining whether the legislative power exists, "we first examine the plain terms of the legislative enactment to determine whether the General Assembly expressly granted a particular power to the municipal corporation."  *Marble Techs.*, 279 Va. at 418.  "If the power is not expressly granted, we then 'determine whether the power . . . is necessarily or fairly implied from the powers expressly granted by the statute.'"  *Id.* (quoting *Gardner Enters.*, 253 Va. at 247).  "When the language of a statute is unambiguous, we are bound by the plain meaning of that language."  *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007).

Code § 27-13 states: "In every county, city, or town in which a fire company is established, there shall be appointed, at such time and in such manner as the governing body of such county, city, or town may prescribe, a chief and as many other officers as such governing body may direct."  In examining the plain terms of the statute, it is crucial to note that the statute only uses the word "appointed" rather than "appointed and removed."

> We presume that the legislature chose, with care, the words it used when it enacted the statute.  Courts cannot add language to the statute the General Assembly has not seen fit to include.  Nor are they permitted to accomplish the same result by judicial interpretation.  Where the General Assembly has expressed its intent in clear and unequivocal terms, it is not the province of the judiciary to add words to the statute or alter its plain meaning.

*Jackson v. Fidelity & Deposit Co.*, 269 Va. 303, 313 (2005) (citations and internal quotation marks omitted). As such, it is not the court's place to insert the words "and removed" to the statute.[5] Also, the statue is unambiguous, making the court bound by the plain meaning of the language.[6] *See Conyers*, 273 Va. at 104. Therefore, as the statute did not provide the legislative body with the power to remove Flint Hill's directors and officers, even if Flint Hill is considered "a fire company" as defined in Code § 27-6.01 and subject to the provisions of Title 27 of the Code of Virginia, the circuit court did erroneously rule that Code § 27-13 authorized the Board of Supervisors' actions and should not have granted the pleas in bar.

III. CONCLUSION

The circuit court erred when it ruled that Code § 27-13 authorized the Board of Supervisors' actions and should not have granted the pleas in bar. The circuit court's judgment is reversed, and we remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*

.

---

[5] Furthermore, a court "cannot by construction supply a *casus omissus* by giving force and effect to the language of the statute when applied to a subject about which nothing whatever is said, and which to all appearances was not in the minds of the legislature at the time of the enactment of the law." *Chandler v. Peninsula Light & Power Co.*, 152 Va. 903, 908 (1929) (quoting 25 *Ruling Case Law* § 225, at 974 (1919)); *see e.g.*, *Foley v. Commonwealth*, 63 Va. App. 186, 196 (2014) ("Where the language used is clear but is not as broad as it might have been, the court cannot give to the words used a new meaning in order to make them include that which the letter of the law excludes" (quoting *Chandler*, 152 Va. at 908)); *Hitt Constr. v. Pratt*, 53 Va. App. 422, 433 (2009) ("Thus, even if the General Assembly simply forgot to include in the Workers' Compensation Act a provision for a majority of commissioners to exercise the authority of the full commission, this Court may not add such language. It is for the General Assembly to write the statute; this Court merely interprets it.").

[6] As the power to remove also does not appear to be "'necessarily or fairly implied' from those express powers" nor "'essential to the declared objects and purposes' of the municipality," we resolve any reasonable doubt against the local governing body. *Bragg Hill Corp.*, 297 Va. at 578. *See Bd. of Supervisors*, 250 Va. at 400.